UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| FORESIGHT ENERGY, LLC, | ) |
| Plaintiff, | ) |
| vs. | ) Case No. 4:22-cv-00887-JAR |
| ACE AMERICAN INSURANCE COMPANY, et al., | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on several related motions presenting the same issue of whether insurance policy arbitration clauses falling under the United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards are enforceable against a Missouri insured notwithstanding the state's anti-arbitration statute. For the reasons set forth below, the Court concludes that the arbitration clauses are enforceable. As a result, Defendants' motion to dismiss or stay the case will be granted in part, and the case will be stayed pending arbitration. Accordingly, Plaintiff's motion to remand will be denied, and other pending motions will be denied as moot.

## BACKGROUND

Plaintiff Foresight Energy, LLC, headquartered in St. Louis, Missouri, is a coal producer that owns and operates mining complexes in southern Illinois. Plaintiff carries all-risk insurance through multiple Defendant insurers whose declarations and endorsements attach to a main policy, pursuant to which Defendants share the risk according to fixed percentages. The main policy and Defendants' respective primary and excess policies contain the same operative coverage terms (e.g., definitions, types and scope of coverage). (Doc. 1-3). As relevant here, the Defendant insurers comprise two sub-groups – those whose polices contain international

arbitration clauses (the "Arbitration Defendants) and those whose policies do not contain arbitration clauses (the "Domestic Defendants").[1]

In 2021, three of Plaintiff's coal mines sustained fire damage resulting in over $115 million in losses. Defendants denied all but $8.8 million of Plaintiff's claims and invoked the arbitration clauses contained in the Arbitration Defendants' policies. On August 17, 2022, Plaintiff filed a petition in state court asserting claims of breach of contract and vexatious refusal and seeking declarations of availability of coverage and invalidity of the arbitration clauses. (Doc. 3). Plaintiff asserts that the arbitration clauses are unenforceable under Missouri's Uniform Arbitration Act (MUAA) prohibiting mandatory arbitration clauses in insurance contracts. Mo. Rev. Stat. § 435.530. On this basis, Plaintiff sought injunctive relief to prevent the Arbitration Defendants from filing suit in any foreign tribunal to enforce the arbitration clauses. The state court granted a temporary restraining order (TRO), finding that such relief was the only way to prevent irreparable harm in the form of a competing lawsuit in a foreign jurisdiction. (Doc. 4).

Defendants removed the case to this Court, where Plaintiff promptly filed a motion to extend the TRO to maintain the status quo while the parties fully briefed the matter. After a video hearing at which all parties were represented and offered argument through counsel, the Court granted Plaintiff's motion to extend the TRO, reasoning that Plaintiff demonstrated a likelihood of success on the merits based on relevant caselaw in this district, and there existed a strong public interest in the proper application and adjudication of Missouri public policy as

---

[1] The Arbitration Insurers are Allied World Assurance Co., Argo Re Ltd., Markel Bermuda Ltd., Oil Casualty Insurance Ltd., and Arch Reinsurance Ltd. The Domestic Insurers are Ace American Insurance Company, Houston Specialty Insurance Company, RSUI Indemnity Company, Certain London Market Insurers Subscribing to Policy No. B0702PN301440o, and Certain London Market Insurers Subscribing to Policy No. B0702PN306460o.

expressed by statute. (Doc. 17). The Court set a schedule for further briefing and heard oral arguments on November 15, 2022.

Four motions are now before the Court: (1) Plaintiff's motion to remand the case to state court, (2) Plaintiff's alternative motion for preliminary injunction, (3) Defendants' motion to dismiss the case or stay it pending arbitration, and (4) Argo and Markel Defendants' motion to dismiss for lack of personal jurisdiction. The dispositive question is whether the international arbitration clauses contained in the Arbitration Defendants' policies are enforceable or rather preempted by Missouri's anti-arbitration statute.

## APPLICABLE LAW

### Missouri Law

The MUAA recognizes the validity and enforceability of arbitration agreements *except* in contracts of insurance and adhesion. Mo. Rev. Stat. § 435.350. Missouri appellate precedent is clear that arbitration clauses in insurance contracts are voidable as against public policy notwithstanding choice of law provisions in the contract. *Sturgeon v. Allied Professionals Ins. Co.*, 344 S.W.3d 205, 210 (Mo. App. E.D. 2011) (holding that Missouri's public policy overrode California choice of law). *Accord, Milburn v. Zurich Am. Ins. Co.*, 478 F. Supp. 3d 789, 792 (E.D. Mo. 2020) ("[P]ublic policy is a matter above and beyond a choice-of-law analysis and can act to override it entirely.").

### International Treaty

The United Nations Convention on the Recognition and Enforcement of Foreign Arbitral Awards (also known as the "New York Convention" or, here, simply the "Convention") is a multi-national treaty providing for the reciprocal enforcement of international arbitration agreements by signatory nations. Article II § 3 of the Convention provides that the courts of

signatory nations shall refer parties to arbitration unless the court finds that the arbitration agreement is null and void, inoperative, or incapable of being performed.

**Federal Arbitration Act**

The Federal Arbitration Act (FAA) generally provides for the validity and enforceability of arbitration agreements and authorizes district courts to compel parties to arbitrate and stay proceedings pending the outcome. 9 U.S.C. §§ 2-3. The United States acceded to the Convention in 1970 upon passage of Chapter II of the FAA (the "Convention Act"). 9 U.S.C. §§ 202-208. Section 203 of the Convention Act vests district courts with original jurisdiction over cases falling within the descriptive parameters of the Convention.

**McCarran-Ferguson Act**

The McCarran-Ferguson Act (MFA) displaces the federal Supremacy Clause in the area of insurance. It states: "No Act of Congress shall be construed to invalidate, impair, or supersede any law enacted by any State for the purpose of regulating the business of insurance ... unless such Act specifically relates to the business of insurance." 15 U.S.C. § 1012(b). Thus, by operation of the MFA, state laws specifically regulating the insurance industry "reverse-preempt" – i.e., supersede – more general federal statutes. "The point of McCarran–Ferguson's legislative choice of leaving insurance regulation generally to the States was to limit congressional preemption under the commerce power." *Am. Ins. Ass'n v. Garamendi*, 539 U.S. 396, 428 (2003).

**Self-Executing Treaties**

"[W]hile treaties may comprise international commitments ... they are not domestic law unless Congress has either enacted implementing statutes or the treaty itself conveys an intention that it be 'self-executing' and is ratified on these terms." *Medellin v. Texas*, 552 U.S. 491, 505 (2008). A treaty is self-executing and has automatic force as domestic law when it "operates of

4

itself without the aid of any legislative provision." *Id.* By contrast, treaty stipulations are not self-executing when they can only be enforced pursuant to legislation to carry them into effect. *Id.* In *Medellin*, the Supreme Court in dicta cited the Convention Act as an example of legislation implementing a non-self-executing treaty. *Medellin*, 552 U.S. 521-522 (stating, "Congress is up to the task of implementing non-self-executing treaties, even those involving complex commercial disputes" and citing 9 U.S.C. §§ 201-208).

### *Foresight I*

This Court previously examined the interplay between the foregoing sources of law in an identical case involving Plaintiff Foresight and some of these same Defendant insurers. *Foresight Energy, LLC v. Certain London Mkt. Ins. Companies*, 311 F. Supp. 3d 1085 (E.D. Mo. 2018). In *Foresight I*, Judge Shaw determined that the Convention is not self-executing because it required implementing legislation in the form of the Convention Act and, thus, the MUAA preempts the Convention Act by application of the MFA. Consequently, absent a basis for federal jurisdiction under the FAA, the Court remanded the case to state court as there was no diversity of parties. In arriving at this conclusion, the Court recognized that there is no Supreme Court or Eighth Circuit precedent squarely on point, and there is no uniform rationale among other circuits.

The Court relied primarily on *Stephens v. Am. Int'l Ins. Co.*, 66 F.3d 41 (2d Cir. 1995). There, the Second Circuit reasoned that the Convention itself was not a self-executing treaty because, in order to be effective in the United States, it required implementation through the Convention Act, which was an "Act of Congress" subject to reverse-preemption under the MFA. Some courts have discounted the ultimate holding in *Stephens* in light of a subsequent decision in which the Second Circuit suggested that its precedents require it to apply federal law to the insurance industry, notwithstanding the MFA, when federal law is clearly intended to displace

5

state laws to the contrary.  *Stephens v. National Distillers & Chemical Corp.*, 69 F.3d 1226, 1233 and n.5-6 (2nd Cir. 1995).  *See e.g., J.B. Hunt Transp., Inc. v. Steadfast Ins. Co.*, 470 F. Supp. 3d 936, 942 (W.D. Ark. 2020) ("[T]he Second Circuit's position is unclear, and the persuasive power of the [first *Stephens*] decision is somewhat questionable.")

Judge Shaw also discussed *Transit Cas. Co. v. Certain Underwriters at Lloyd's of London*, 119 F.3d 619 (8th Cir. 1997).  There, the district court had noted that neither the Convention itself nor its implementing statute in the FAA specifically related to the business of insurance, so the MUAA preempted the federal statute by operation of the MFA.  *Transit Cas. Co. in Receivership v. Certain Underwriters at Lloyd's of London*, 96-4173-CV-C-2, 1996 WL 938126, at *2 (W.D. Mo. June 10, 1996).  As a result, the court found itself lacking jurisdiction under the FAA and therefore remanded the case to state court.  *Id*. at *4.  On appeal, the Eighth Circuit dismissed the case for its own lack of jurisdiction without addressing the merits, reasoning that the district court's remand order was unreviewable.  *Transit Cas.*, 119 F.3d at 625.

**Precedent Enforcing Arbitration**

Judge Shaw acknowledged in *Foresight I* that the Fourth and Fifth Circuits declined to follow *Stevens* and instead held that the MFA did not reverse-preempt the Convention.  Neither circuit based its analysis on the question of self-execution, instead simply holding that the MFA applied only to domestic legislation and not treaties.

In *ESAB Group., Inc. v. Zurich Insurance PLC*, the Fourth Circuit held that Congress did not intend for the MFA to supersede treaty-implementing statutes such as the Convention Act. 685 F.3d 376, 388-91 (4th Cir. 2012).  This reasoning was based in part on the Supreme Court's statement, in a different context, that the MFA only applies to domestic legislation.  "[A] federal statute directed to implied preemption by domestic commerce legislation cannot sensibly be construed to address preemption by executive conduct in foreign affairs." *Garamendi*, 539 U.S.

6

at 428 (holding that the California Holocaust Victim Insurance Relief Act is preempted by the President's conduct of foreign policy). In *Safety National Casualty Corp. v. Certain Underwriters at Lloyd's, London*, 587 F.3d 714 (5th Cir. 2009) (en banc), the Fifth Circuit, too, held that the phrase "Act of Congress" in the MFA does not include treaties and their implementing legislation. *Id.* at 722–24. *See also*, *McDonnel Group, L.L.C. v. Great Lakes Insurance SE, UK Branch*, 923 F.3d 427, 432 (5th Cir. 2019) ("[T]he McCarran-Ferguson Act does not permit state laws to reverse-preempt the Convention."). *Accord*, *Catalina Holdings (Bermuda) Ltd. v. Hammer*, 378 F. Supp. 3d 687, 694 (N.D. Ill. 2019) (adopting the Fourth and Fifth Circuits' reasoning). At least one district court in the Eighth Circuit has adopted the foregoing rationales. *See J.B. Hunt Transport*, 470 F. Supp. 3d at 943–44 (declining to follow *Foresight I*), and *Murphy Oil USA, Inc. v. SR International Business Insurance Co., Ltd.*, 2007 WL 2752366, at *4 (W.D. Ark. Sept. 20, 2007) (citing principles of international comity).

Other courts, and most recently the Ninth Circuit, have reached the same result based on alternate reasoning that, even if the Convention is not self-executing in its entirety, Article II § 3 alone *is* self-executing (and thus not subject to MFA preemption) because it states that signatory nations' courts *shall* refer parties to arbitration. *CLMS Mgmt. Services Ltd. P'ship v. Amwins Brokerage of Georgia, LLC*, 8 F.4th 1007 (9th Cir. 2021); *Martin v. Certain Underwriters of Lloyd's, London*, 2011 WL 13227729, at *6 (C.D. Cal. Sept. 2, 2011); *J.B. Hunt Transport*, 470 F. Supp. 3d at 944-45. The Fourth and Fifth Circuits rejected this approach, as nothing in the Convention Act or legislative history distinguishes Article II of the Convention from the rest of it, *ESAB*, 685 F.3d at 387, and it would be illogical for the MFA to preempt self-executing treaties but not treaties requiring implementation. *Safety National*, 587 F.3d at 723-724 ("The fact that a treaty is implemented by Congress does not mean that it ceases to be a treaty and becomes an 'Act of Congress.'").

## DISCUSSION

**Plaintiff's Motion to Remand v. Defendant's Motion to Dismiss/Stay**

The Court first addresses the parties' competing motions to remand or dismiss the case, as the question central to both resolves all pending motions. Relying on *Foresight I*, Plaintiff contends that the Convention Act, which implemented the Convention, is an "Act of Congress" subject to the reverse-preemptive effect of the MFA. Thus, by operation of the MFA, the MUAA preempts the Convention Act such that the Court lacks jurisdiction under the FAA. As such, and absent diversity of parties, Plaintiff maintains that the case should be remanded to state court. Defendants, on the other hand, insist that *Foresight I* was wrongly decided as reflected by mounting contrary decisions of other circuit and district courts. Thus, Defendants oppose remand and move for dismissal – or alternatively a stay – and referral to arbitration under the Convention.

As Judge Shaw noted in *Foresight I*, the caselaw on this issue varies in its reasoning. Upon review of the applicable precedents, this Court is not persuaded that the treaty's execution mechanism should be the dispositive question. The notion that the Convention is self-executing is problematic for several reasons. First, the Supreme Court has specifically cited the Convention as a non-self-executing treaty, albeit in dicta. *Medellin*, 552 U.S. 521-522. Second, the legislative history of the Convention Act suggests that the Convention was not intended to be self-executing. The Senate ratified the Convention in 1968 but delayed accession until passage of the Convention Act in 1970.

Third, it is unclear that Article II § 3 of the Convention can be dissected from the whole and declared uniquely self-executing. That paragraph simply provides, within the overall framework, that in cases where the parties have a qualifying agreement, the court of a signatory nation shall refer the parties to arbitration. Though some courts rely on the word "shall" in that

sentence to support the view that it is distinct from other treaty provisions, the word "shall" is used throughout the English version of the treaty,[2] often in a manner interchangeable with present or future tense as is common in British usage.[3]  The French version confirms this point, employing present and future tense where the English version says "shall."[4]

 Further, declaring this one paragraph self-executing necessarily implies that it required no implementing legislation, but it makes no sense that a court referral provision would become effective two years before the rest of the treaty.  In arguing that Article II § 3 alone is self-executing, Defendants cite to dicta in *Medellin* reasoning that Article 94 of the U.N. Charter was not self-executing because it was "not a directive to domestic courts" and did not contain the words "shall" or "must."  552 U.S. at 508.  Defendants contend that Article II § 3 satisfies these missing characteristics.  But, when taken in context, this passage of *Medellin* does not support Defendants' argument because the Court went on to note that Article 94 lacked any indication that the Senate intended to vest ICJ decisions with immediate legal effect in U.S. courts.  The Court also examined the remainder of the Article, which confirmed that the Charter did not contemplate automatic enforceability of IJC decisions.  "There is no reason to believe that the President and Senate signed up for such a result."  *Id*. at 511.  The same could be said here.

Ultimately, however, the Court need not decide whether the Convention is self-executing.  The Court must only acknowledge the mounting precedent favoring enforcement of the

---

[2]   For example, Article II § 1 states that each signatory nation shall recognize a written arbitration agreement.  Article III states that each signatory shall recognize arbitral awards and enforce them in accordance with domestic rules of procedure.

[3]   For example, Article I states that the Convention shall apply to the recognition and enforcement of awards issued in states other than where sought.  It further states that the term "arbitral awards" shall include awards made by both appointed arbitrators and permanent bodies to which the parties submitted.  Article VIII states that the treaty shall be open until December 31, 1958 and shall be ratified and deposited with the Secretary General of the United Nations.

[4]   For example, the French version of Article II § 3 provides that the court of a signatory state *will* refer (*renverra*) parties to arbitration.

9

Convention.  The Supreme Court's denial of *certiorari* in *Safety National* and most recently in *CLMS*, though decided on divergent rationales, could reasonably be understood to signify its approval of the end result: that the Convention is not preempted by state anti-arbitration statutes.  Guided by that premise, in this Court's estimation, the cleaner analysis and most logical conclusion, consistent with the decisions of the Fourth and Fifth Circuits, is that the MFA applies only to domestic legislation and simply does not contemplate the preemption of international treaties.

The Court does not depart lightly from *Foresight I* but finds a different result appropriate and fundamentally just here, given the history of this case and these parties.  It bears noting that the insurance policies at issue in *Foresight I* were governed by Missouri law.  This time, however, the Arbitration Defendants insisted on New York or England choice-of-law provisions in the policies issued to Plaintiff in 2020, after *Foresight I*.  Plaintiff purchased these policies well-aware of its new arbitration obligations and apparently intended to avoid performance through this litigation.  The Court is not persuaded that Missouri public policy was meant to relieve a sophisticated party from its contractual commitments in this manner.

Accordingly, Plaintiff's claims against the Arbitration Defendants will be referred to arbitration pursuant to the parties' respective agreements.  Plaintiff's claims against them will be stayed in the interim, pursuant to 9 U.S.C. § 3.  However, this disposition does not resolve Plaintiff's claims against the Domestic Defendants whose policies do not contain arbitration agreements falling under the Convention.

**Domestic Defendants**

The Domestic Defendants assert that this Court should retain jurisdiction over Plaintiff's against them because (1) even though their policies do not contain arbitration agreements falling under the Convention, the Court nonetheless has original jurisdiction under the FAA in that these

claims "relate to" Plaintiff's claims against the Arbitration Defendants and/or (2) the Court has supplemental jurisdiction in that Plaintiff's claims against both sets of Defendants arise from the same case or controversy. The Court finds it appropriate to retain jurisdiction over these claims pending the outcome of arbitration.

FAA § 205

Section 205 of the FAA allows removal whenever the subject matter of an action pending in state court "relates to" an arbitration agreement falling under the Convention. 9 U.S.C. § 205. "The removal right in § 205 is 'substantially broader' than that in the general removal statute." *Reid v. Doe Run Res. Corp.*, 701 F.3d 840, 843 (8th Cir. 2012). A case may be removed under § 205 if the arbitration could conceivably affect the outcome. *Id*. at 844. In *Reid*, the plaintiffs filed toxic tort claims in state court against several defendants, one of which sought defense and indemnification of the claims from a predecessor company through arbitration proceedings under the Convention. After the defendants removed the case to federal court under § 205, the plaintiffs argued that their claims did not "relate to" the separate arbitration. The Eighth Circuit disagreed because the issues in the arbitration "could conceivably affect the outcome of the case." *Id*. For example, the court reasoned, the arbitration might touch upon timing, causation, and the role of the predecessor, and either party could "inject portions of the arbitration" into the case even if the plaintiffs were not bound by the arbitration. *Id*. The court cited similar holdings in the Fifth and Ninth Circuits.

In *Acosta v. Master Maint. & Const. Inc.*, 452 F.3d 373 (5th Cir. 2006), the plaintiffs filed toxic tort claims against multiple defendants and their insurers. The insurers instituted arbitration proceedings to resolve a coverage dispute with the insured defendants. The Fifth Circuit affirmed the propriety of removal under § 205 in that the litigation was necessarily "related to" the arbitration. *Id*. at 377-79. In *Infuturia Glob. Ltd. v. Sequus Pharmaceuticals,*

11

*Inc.*, 631 F.3d 1133 (9th Cir. 2011), the plaintiff filed a state court petition against three defendants for tortious interference of contract. The case was stayed while the plaintiff arbitrated its claims against the contracting party. After the arbitration, the plaintiff amended its claims consistent with the arbitrator's findings, and the defendants removed the case under § 205. The trial court denied remand and the Ninth Circuit affirmed, reasoning that § 205 does not require the relatedness of parties but only of subject matter between the action and the arbitration agreement. *Id*. at 1138. The court further reasoned that the arbitral award could conceivably affect the outcome of the case because the defendant invoked collateral estoppel as to issues resolved in the arbitration. *Id*. at 1138-39.

Relying on the foregoing precedent, the Domestic Defendants assert that, because Plaintiff's claims against them are the same as Plaintiff's claims against the Arbitration Defendants (i.e., breach of contract and vexatious refusal involving the same set of facts and policy language), the arbitration between Plaintiff and the Arbitration Defendants could conceivably affect the outcome of Plaintiff's claims against the Domestic Defendants in several possible ways. For example, expert reports and opinions may be adduced, certain material facts may be established, the arbitration panel will reach key factual and legal conclusions relevant to Plaintiff's claims, and the arbitration decision could provide a defense based on equitable estoppel.

Plaintiff, on the other hand, argues that its claims against the Domestic Defendants do not relate to the arbitration agreements, and no determinations made in arbitration would be binding in this case, so the Court should remand these claims to state court. Plaintiff cites two district court cases where a plaintiff sued multiple insurers. In *SFA Group, LLC v. Certain Underwriters at Lloyd's, London*, CV 16-04202-GHK (JC), 2016 WL 5842180, at *5 (C.D. Cal. Sept. 29, 2016), the court found that insurance policies at different layers of coverage were not sufficiently

12

intertwined so as to relate to other policies containing arbitration clauses. In *Realty Trust Group, Inc. v. Ace Am. Ins. Co.*, 1:07CV573-HSO-JMR, 2007 WL 4365352, at *5 (S.D. Miss. Dec. 11, 2007), involving a quota-share policy like the present, the court found that the plaintiff's claims against the non-arbitration insurers were not intertwined with those asserted against arbitration insurers because the endorsements were separate and there was no evidence that the insurers had acted in concert. There, however, the arbitration insurers had been voluntarily dismissed and the non-arbitration insurers sought to compel arbitration. The Court finds it logical that a district court would remand under those circumstances.

But the Court cannot agree, as a factual matter, that each Defendant's policy is separate and unrelated here. Notably, Plaintiff's own complaint bundles its claims against all Defendants collectively. (Doc. 3). Defendants' respective policies attach to a main policy with common operative terms such that evidence or testimony adduced in arbitration, or the arbitral panel's interpretation of policy language and application of that language to common facts surrounding Plaintiff's fire losses, even if not binding, might be admissible and thus could conceivably affect the outcome.[5] Stated inversely, the Court cannot assume, at this stage, that the arbitration proceedings would have no effect on Plaintiff's present claims against the Domestic Defendants. The Court finds that the subject matter of Plaintiff's claims against the Domestic Defendants sufficiently relates to Plaintiff's arbitration agreements such that jurisdiction is proper under § 205.

Supplementary Jurisdiction

Alternatively, the Court also finds it appropriate to exercise supplemental jurisdiction in this case. District courts have supplemental jurisdiction over claims that form part of the same

---

[5] The Court does not opine here on the potential admissibility of any such matters.

case or controversy. 28 U.S.C. § 1367(a). Plaintiff's case against the Domestic Defendants involves the same occurrences, main policy terms, and legal claims as those involving the Arbitration Defendants who invoked the Court's original jurisdiction. Once supplemental jurisdiction is established, the court should decline to exercise it only if (1) the claim raises a novel or complex issue of state law, (2) the claim substantially predominates over the claims invoking the court's original jurisdiction, (3) the court has dismissed all claims invoking its original jurisdiction, or (4) in exceptional circumstances involving other compelling reasons to decline. 28 U.S.C. § 1367(c). None of these factors are present here, particularly insofar as the Court intends to stay rather than dismiss the case as to the Arbitration Defendants. 9 U.S.C. § 3. Accordingly, and the interest of judicial economy, the Court will retain supplemental jurisdiction over Plaintiff's claims against the Domestic Defendants but will stay proceedings as to them as well, pending the outcome of arbitration. *See U.S. for use of Lighting & Power Services, Inc. v. Interface Const. Corp.*, 553 F.3d 1150, 1156 n.5 (8th Cir. 2009) (noting that the district court has discretion to stay third-party litigation involving common questions of fact within the scope of an arbitration agreement).

**Other Motions**

Given the foregoing disposition, Plaintiff's motion for preliminary injunction, to enjoin Defendants from seeking to enforce the arbitration agreements, will be denied as moot. Finally, Defendant insurers Argo and Markel have filed a motion to dismiss for lack of personal jurisdiction. They aver that the Court need not reach this motion if it grants Defendants' motion to dismiss or stay the case. As such, this motion, too, will be denied as moot.

**CONCLUSION**

An increasing majority of district and circuit courts have concluded that state anti-arbitration statutes do not reverse-preempt the U.N. Convention on the Recognition and Enforcement of Foreign Arbitral Awards. Though rationales diverge, the Supreme Court appears to endorse the end result. The Court is thus compelled to join the majority view that the MUAA does not reverse-preempt the Convention. Consequently, Plaintiff must arbitrate its claims against the Arbitration Defendants pursuant to their respective agreements.

Accordingly,

**IT IS HEREBY ORDERED** that the Court's temporary restraining order is **VACATED**. (Doc. 17).

**IT IS FURTHER ORDERED** that Plaintiff's motion to remand the case to state court is **DENIED**. (Doc. 57).

**IT IS FURTHER ORDERED** that Defendants' motion to dismiss or stay the case is **GRANTED in part** and **DENIED in part**. (Doc. 38). Defendants' motion to dismiss is **DENIED**. Plaintiff's claims against the Arbitration Defendants are referred to arbitration pursuant to their respective agreements. In the interim, this case is **STAYED** and administratively closed pending the conclusion of arbitration.

**IT IS FURTHER ORDERED** that Plaintiff's motion for preliminary injunction is **DENIED as moot**. (Doc. 68).

**IT IS FURTHER ORDERED** that the Argo and Markel Defendants' motion to dismiss for lack of personal jurisdiction is **DENIED as moot**. (Doc. 35).

**IT IS FINALLY ORDERED** that the Clerk of the Court is directed to disburse Plaintiff's surety bond of $100 to Defendants, payable to Ace American Insurance Company, through counsel Sandra Wunderlich.

Dated this 21st day of March 2023.

*[signature: John A. Ross]*

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

Case: 4:22-cv-00887-JAR   Doc. #:  98   Filed: 03/21/23   Page: 16 of 16 PageID #: 1342